UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

BRIAN K. MOSBY (#312731)

VERSUS                                    CIVIL ACTION

N. BURL CAIN, ET AL                       NUMBER 11-41-BAJ-SCR

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, November 26, 2012.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

BRIAN K. MOSBY (#312731)

VERSUS                                          CIVIL ACTION

N. BURL CAIN, ET AL                             NUMBER 11-41-BAJ-SCR

**MAGISTRATE JUDGE'S REPORT**

Before the court is the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody filed by Brian K. Mosby.

For the reasons which follow, the petition should be denied.

**I. State Court Procedural History**

Petitioner was found guilty of one count second degree murder in the Eighteenth Judicial District Court for the Parish of Iberville, Louisiana on March 5, 2004. Petitioner was sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence.

On direct appeal the petitioner asserted the following assignments of error:

1. the trial court erred in admitting four gruesome autopsy photographs of the victim's body; and

2. the trial court erred in permitting the prosecutor to unfairly prejudice the jury during his rebuttal closing argument.

The Louisiana First Circuit Court of Appeal affirmed the petitioner's conviction and sentence. *State v. Brian Mosby*, 2004-1849 (La. App. 1st Cir. 5/6/05), 903 So.2d 24 (Table). Petitioner sought supervisory review by the Louisiana Supreme Court. The Louisiana Supreme Court denied review. *State of Louisiana v. Brian Mosby*, 2005-1717 (La. 2/10/06), 924 So. 2d 161.

Petitioner signed an application for post-conviction relief ("PCRA") on January 19, 2007 and it was filed in the trial court on January 24, 2007. Petitioner asserted the following grounds for relief:

1.  his due process and equal protection rights to a fair trial were denied when:

    a.  no pretrial motions were filed between arraignment and trial;

    b.  he was not read his *Miranda* rights following arrest;

    c.  he filed several motions for a speedy trial, as to which the court ordered the district attorney to show cause, but the motions were disregarded by the court and the district attorney;

    d.  he filed several motions to quash the indictment which were disregarded by the court and the district attorney;

    e.  he was not re-indicted after the three year limitation to prosecute him expired;

    f.  he was not tried within three years;

    g.  he was not given credit for time served;

2.  the prosecutor engaged in misconduct when he:

2

    a.   misled the jury;

    b.   vouched for the credibility of government witnesses;

    c.   misquoted defense witnesses' testimony;

    d.   attacked defense counsel and made improper comments about defense counsel's argument;

    e.   asked the jury to pass on the prosecutor's integrity and ethics before deliberating;

    f.   instructed the jury to have sympathy for the victim's family;

    g.   was untruthful about having no plea agreement with witnesses;

    h.   during closing arguments asserted the petitioner killed a man even though that fact had not been proven;

    i.   failed to correct false testimony that witnesses had not been granted immunity;

    j.   repeatedly referenced evidence not in the record during opening and closing statements;

3.   the indictment was defective because it omits the essential elements of the crime; and,

4.   he was denied effective assistance of counsel when:

    a.   counsel failed to appeal the denial of defendant's motions to the appellate court;

    b.   counsel failed to file a motion to quash the indictment after the petitioner was not re-indicted or tried within three years;

    c.   counsel failed to locate witnesses who would testify on the petitioner's behalf;

      d.     counsel relied on a strategy to attack the weaknesses in the prosecution's case instead of investigating to discover witnesses despite the existence of a credible defense;

      e.     counsel failed to investigate and obtain exculpatory evidence;

      f.     counsel failed to interview the police officer who confiscated a firearm from the petitioner;

      g.     counsel failed to investigate and introduce key exculpatory evidence;

      h.     counsel denied the petitioner a speedy trial by denying the petitioner's *pro se* motion for a speedy trial and failed to file a motion for speedy trial on the petitioner's behalf; and,

      i.     counsel failed to retain a drug expert after the petitioner advised counsel that the State's witnesses were all drug users.

The trial court denied the PCRA on March 25, 2009.

Petitioner sought review in the Louisiana First Circuit Court of Appeal.[1]  The Louisiana First Circuit Court of Appeal denied review on August 17, 2009 on the showing made. *State of Louisiana v. Brian K. Mosby*, 2009-0766 (La. App. 1st Cir. 8/17/09). Because the petitioner had failed to include copies of pertinent transcripts, minute entries, indictment, motions at issue and portions of state court record which support claims, the appellate

---

[1] The state court record includes an undated copy of the writ application.  Petitioner contends that it was filed on April 22, 2009, and this date is not disputed by the respondent.

court advised the petitioner that a new application must be filed on or before October 12, 2009.  Petitioner filed a second writ application on August 26, 2009.[2]  The Louisiana First Circuit Court of Appeal denied review in part, and denied on the showing made in part, on November 9, 2009.  *State of Louisiana v. Brian K. Mosby*, 2009-1624 (La. App. 1st Cir. 11/9/09).[3]  As to the petitioner's claims of ineffective assistance of counsel and the denial of his right to a speedy trial, the writ was denied on the showing made.[4]  Petitioner was advised that a new application must be filed on or before January 5, 2010.  Petitioner did not file a new application in the Louisiana First Circuit Court of Appeal.

Petitioner sought review by the Louisiana Supreme Court,[5] which denied review on November 19, 2010.  *State of Louisiana ex rel. Brian K. Mosby v. State of Louisiana*, 2009-2600 (La. 6/5/09), 49 So.3d 403.

---

[2] Copies of the second writ application filed in the First Circuit Court of Appeal and the writ applications in the Louisiana Supreme Court are not contained in the state court record. However, it is undisputed that the petitioner filed writ applications in both appellate courts.  The date the second writ application was filed is not in dispute.

[3] Record document number 1, p. 103.

[4] *Id*.

[5] *Id*. at 106-124.

## II.  Federal Court Procedural History

Petitioner signed his federal habeas corpus petition on December 8, 2010, and it was filed on December 16, 2010 in the United States District Court for the Eastern District of Louisiana. The petition was transferred to the Middle District of Louisiana on January 25, 2011.

Petitioner raised the following grounds for relief:

1.   his due process and equal protection rights to a fair trial were denied when he was denied a speedy trial;

2.   the prosecutor engaged in misconduct during closing argument and knowingly introduced false testimony;

3.   the indictment was defective because it omits the essential elements of the crime;

4.   he was denied effective assistance of counsel when:

   a.   counsel failed to appeal the denial of his motions by the trial court;

   b.   counsel failed to file a motion to quash the indictment after the petitioner was not re-indicted or tried within three years;

   c.   counsel failed to locate witnesses who would testify on the petitioner's behalf;

   d.   counsel relied on a strategy to attack the weaknesses in the prosecution's case instead of investigating to discover witnesses despite the existence of a credible defense;

   e.   counsel failed to investigate and obtain exculpatory evidence;

   f.   counsel failed to interview the police officer who confiscated a firearm from

6

the petitioner;

g.  counsel failed to investigate and introduce key exculpatory evidence;

h.  counsel rejected the petitioner's pro se motion for a speedy trial and failed to file a motion for speedy trial on the petitioner's behalf; and,

i.  counsel failed to retain a drug expert after the petitioner advised counsel that the State's witnesses were all drug users; and,

5.  the trial court erred in permitting the prosecutor to unfairly prejudice the jury in his rebuttal arguments.

### III. Applicable Law and Analysis

**A. Timeliness**

The respondent argued that the petition was not filed timely.

Under § 2244(d), as amended by the Antiterrorism and Effective Death Penalty Act, a prisoner in custody pursuant to the judgment of a state court has a one year period within which to file an application for a writ of habeas corpus.  The limitation period runs from the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.  28 U.S.C. § 2244(d)(1)(A).

As provided by § 2254(d)(2), the time during which a properly filed application for state post-conviction or other collateral review, with respect to the pertinent judgment or claim, is pending shall not be counted toward any period of limitation under this subsection.  A "properly filed application" is one submitted

7

according to the state's procedural requirements, such as the rules governing the time and place of filing. *Lovasz v. Scig*, 134 F.3d 146, 148-49 (3rd Cir. 1998); *Galindo v. Johnson*, 19 F.Supp.2d 697, 701 (W.D. Tex. 1998). A court must look to state law to determine whether a state habeas application conforms to the state's procedural filing requirements. *Wion v. Quarterman*, 567 F.3d 146, 148 (5th Cir. 2009).

A state application is "pending" during the intervals between the state court's disposition of a state habeas corpus petition and the petitioner's timely filing of petition of review at the next level. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001). An application ceases to be "pending" within the meaning of § 2244(d)(2) when the petitioner fails to timely file an application for supervisory review at the next level. *Id*. at 407. A state court's subsequent decision to allow review may toll the time relating directly to the application, but it does not change the fact that the application was not pending prior to the application. *Id*. After the period for appeal or seeking discretionary review has lapsed, an application ceases to be pending, but a subsequent properly filed application entitles the petitioner to additional tolling beginning at the time of the "proper" filing. *Id*.

Petitioner's conviction became final on May 11, 2006.[6] From

---

[6] For purposes of § 2244(d)(1)(A), a state conviction becomes final by the conclusion of direct review or the expiration of the
(continued...)

the date the petitioner's conviction became final on May 11, 2006, until January 19, 2007, the date the petitioner filed his PCRA, 252 days of the limitations period elapsed.  From March 25, 2009, the date the trial court denied the PCRA, until September 17, 2010, the date the Louisiana Supreme Court denied review, the limitations period remained tolled.  From the date the Louisiana Supreme Court denied review, until December 9, 2010, the date the petitioner signed his federal habeas corpus application, 82 days of the limitations period elapsed.  By the time the petitioner filed his federal habeas corpus petition, 334 days of the limitations period had elapsed.  Petitioner's federal habeas corpus petition was timely filed.

**B. Standard of Review**

Section 2254(d) provides  as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an

---

[6](...continued)
time for seeking such review.  *See Causey v. Cain*, 450 F.3d 601, 606 (5th Cir. 2003) ("[A] conviction becomes final at the conclusion of direct review or when the time for such review has expired, as specified by AEDPA, regardless of when state law says finality occurs.").  Normally that time expires 90 days after the state court of last resort enters its judgment.  *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003).

> unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254(e)(1) provides as follows:

> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Subsection (d)(2) of § 2254 applies to a state court's factual determination. It bars federal court relief unless the state court adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence." Subsection (d)(1) provides the standard of review for questions of law and mixed questions of law and fact. *Drinkard v. Johnson*, 97 F.3d 751, 767-68 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107, 117 S.Ct. 1114 (1997).

The second clause of subsection (d)(1) refers to mixed questions of law and fact because it speaks of an "unreasonable application of ... clearly established Federal law." When the issue before the court is a mixed question of law and fact, the court may grant relief only if it determines that the state court decision rested on "an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court," to the facts of the case. The first clause of subsection (d)(1) refers to questions of law. When the issue raised involves a

10

purely legal question, the court may grant relief only if it determines that a state court's decision rested on a legal determination that was "contrary to...clearly established Federal law, as determined by the Supreme Court." *Id.*

Review under § 2254(d)(1) is limited to the record that was before the state court which adjudicated the claim on the merits. *Cullen v. Pinholster*, _____ U.S. _____, 131 S.Ct. 1388, 1399, 179 L.Ed.2d 557 (2011); *McCamey v. Epps*, 658 F.3d 491, 497 (5th Cir. 2011). Review under § 2254(d)(1) focuses on what a state court knew and did. *Cullen v. Pinholster*, 131 S.Ct. at 1399. "[E]vidence introduced in federal court has no bearing on § 2254(d)(1) review. If a claim has been adjudicated on the merits by a state court, a federal habeas corpus petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Id.*, at 1400. State court decisions are measured against the Supreme Court's precedents as of "the time the state court renders its decisions." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S.Ct. 1166 (2003).

To determine whether a particular decision is "contrary to" then-established law, a federal court must consider whether the decision "applies a rule that contradicts [such] law" and how the decision "confronts [the] set of facts" that were before the state court. *Williams v. Taylor*, 529 U.S. 362, 405, 406, 120 S.Ct. 1495 (2000). If the state court decision "identifies the correct

governing legal principle" in existence at the time, a federal court must assess whether the decision "unreasonably applies that principle to the facts of the prisoner's case." *Id.*, at 413, 120 S.Ct. 1495.

### C. Grounds for Relief

#### Ground 1: Speedy Trial Violation

In his first ground for relief, the petitioner argued that his his due process and equal protection rights to a fair trial were violated when he was denied a speedy trial.

First, a federal habeas court may grant relief when the petitioner is held in custody pursuant to a judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). Federal courts will not review a state court's interpretation of its own law in a federal habeas corpus proceeding. *Cook v. Morrill*, 783 F.2d 593 (5th Cir. 1986).

Insofar as the foundation of the petitioner's speedy trial claim rests on the proper interpretation and application of state law, this is an issue not within the scope of federal habeas corpus.

Second, determination whether a petitioner's Sixth Amendment right to a speedy trial has been violated requires a careful balancing of the four factors enunciated by the Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182 (1972). The factors

12

are: (1) the length of the delay, (2) the reason for the delay, (3) the assertion of the right, and (4) the prejudice to the petitioner. *Robinson v. Whitley*, 2 F.3d 562 (5th Cir. 1993). These factors "have no talismanic qualities," and "none of the four factors [is] either a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial." *Id*. at 407 U.S. 533, 92 S.Ct. 2193.   The first factor serves as a "triggering mechanism." *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192. If the length of the delay reaches a threshold level regarded as "presumptively prejudicial," the court must make findings regarding the remaining three factors and balance all of them accordingly. *Id*.   The relevant period of delay is that following accusation, either arrest or indictment, whichever occurs first. *Dillingham v. United States*, 423 U.S. 64, 96 S.Ct. 303 (1975); *Robinson*, at 568.

Petitioner was arrested on May 6, 1999,[7] and his trial began on March 1, 2004.  The Fifth Circuit generally requires the delay of one year to trigger a full speedy trial analysis. *Robinson*, at 568; *Nelson v. Hargett*, 989 F.2d 847, 851 (5th Cir. 1993).

The first factor in the *Barker* analysis is length of delay. In this case, nearly 58 months passes between the date of the petitioner's arrest and the commencement of his trial.  The Fifth

---

[7] State Court Record, Vol. 1, p. 62.  Petitioner was indicted for first degree murder. *Id*. at 33.  The indictment was amended on May 12, 2003, charging the petitioner with second degree murder. *Id*. at 34.

Circuit has held that delays of less than five years are not enough, by duration alone, to presume prejudice. *U.S. v. Serna-Villarreal*, 352 F.3d 225, 232 (5th Cir. 2003). Because there was less than a five year delay prejudice is not presumed, but the delay is factor which must be considered.

The second factor in the *Barker* analysis considers the reasons for the delay. The burden is on the government to "assign[] reasons to justify the delay." *Barker*, 407 U.S. at 531, 92 S.Ct. at 2192. The weight assigned to a state's reasons for post-accusation delay depends on the reasons proffered. *Id*. At one extreme, a deliberate delay to disadvantage the defense is weighted heavily against the state. *Id*. At the other end of the spectrum, delays explained by valid reasons or attributable to the conduct of the defendant weigh in favor of the state. *See Cowart v. Hargett*, 16 F.3d 642, 647 (5th Cir. 1994) (discussing *Barker*). Between these extremes fall unexplained or negligent delays, which weigh against the state, but not heavily. *Goodrum v. Quarterman*, 547 F.3d 249, 259 (5th Cir. 2008).

The State argued that the defense filed numerous motions to continue and joined with the State to file other motions to continue.

The court minutes in the state court record showed that the petitioner filed six motions for continuance between August 3, 1999

14

and December 1, 2003.[8]   In addition, the petitioner filed four joint motions for continuance between June 1, 2000 and October 15, 2001.[9]  The State filed two motions for continuance, on January 4, 2000 and August 13, 2001.[10]

The majority of the delay is attributable to the conduct of the petitioner.  There is no credible record evidence that the State intentionally delayed the petitioner's trial to gain any tactical advantage, or in fact that any tactical advantage was gained by the State as a result of the delay.  This factor weighs in favor of the State.

The third factor places the burden on the petitioner to assert his right to a speedy trial.  "[T]he point at which the defendant asserts his right is important because it may reflect the seriousness of the personal prejudice he is experiencing." *United States v. Palmer*, 537 F.2d 1287, 1288 (5th Cir. 1976), *cert. denied*, 434 U.S. 1018, 98 S.Ct. 738 (1978).

Petitioner filed a pro se Motion for Fast and Speedy Trial and Motion to Quash on October 11, 1999, which was 157 days after being arrested and 136 days after being indicted for first degree

---

[8] *Id*. at 2, 3, 4, 7, 10, and 19.

[9] *Id*. at 8, 12, 13 and 15.

[10] *Id*. at 5 and 14.

15

murder.[11]   Petitioner filed a second pro se Motion for Fast and
Speedy Trial on September 18, 2003.[12]

   Here, the state court record reflects that the petitioner
timely asserted his right to a speedy trial.   The third *Barker*
factor weighs in favor of the petitioner.

   The final *Barker* factor requires the court to assess the
degree of prejudice suffered by the petitioner due to the pretrial
delay.   Ordinarily, the burden of demonstrating such prejudice
rests on the defendant.   *United States v. Serna-Villarreal*, 352
F.3d 225, 230 (5th Cir. 2003).   In *Doggett v. United States*, 505
U.S. 647, 112 S.Ct. 2686 (1992), the Supreme Court modified the
analysis of this factor.   The Court stated that "affirmative proof
of particularized prejudice is not essential to every speedy trial
claim."   *Id.*, 505 U.S. at 655, 112 S.Ct. at 2692.   There are
situations when "excessive delay presumptively compromises the
reliability of a trial in ways that neither party can prove, or for
that matter, identify."   *Id.*, 505 U.S. at 655, 112 S.Ct. at 2693.
Depending on the particular circumstances of each case, a
petitioner has to show varying degrees of prejudice.   The degree of
proof required in each situation varies inversely with the state's
degree of culpability for the delay.   Where the state was
reasonably diligent in its efforts to bring the petitioner to

---

[11]  *Id*. at 62.

[12]  State Court Record, Vol. 2, p. 327.

16

trial, the petitioner must show "specific prejudice to his defense." *Id*., 505 U.S. at 656, 112 S.Ct. at 2693.  If the petitioner can show that the state intentionally held back the prosecution in order to gain an impermissible tactical advantage, then the petitioner would "present an overwhelming case for dismissal." *Id*.

Occupying a position between these two extremes is "official negligence." *Id*.  When the state's conduct is neither diligent nor malicious but simply negligent, the court must determine what portion of the delay is attributable to the state's negligence and whether this negligent delay is of such duration that prejudice to the defendant should be presumed.  *Id*., 505 U.S. at 657, 112 S.Ct. at 2693.  The weight given to the state's negligence varies directly with its protractedness and its consequent threat to the fairness of the petitioner's trial.  *Id*.

The record supports a finding that the delay between the petitioner's arrest and his trial was not caused by the State.  A review of all the pretrial events supports finding that the State was reasonably diligent in its efforts to bring the petitioner to trial.  Thus, the petitioner must show specific prejudice to his defense.

Petitioner urged that he was prejudiced by his continuous incarceration, deprived of the ability to retain employment in order to afford effective counsel and to subpoena witnesses who had

moved out-of-state.[13] Petitioner called three witnesses: Clara James, Antoinette Williams and Robbie Johnson.[14] A review of the trial transcript does not support finding that the petitioner's witnesses were unavailable for trial.

Consideration of all the *Barker* factors supports finding that the petitioner was not actually prejudiced by the pretrial delay.

### Grounds 2 and 5: Prosecutorial Misconduct

In his second and fifth grounds for relief the petitioner argued that the prosecutor engaged in misconduct during closing arguments. Generally, the petitioner argued that the prosecutor engaged in misconduct during closing arguments when he misled the jury, vouched for the credibility of government witnesses, misquoted defense witnesses' testimony, verbally attacked defense counsel and made improper comments about defense counsel's argument, asked the jury to consider the prosecutor's integrity and ethics before deliberating, instructed the jury to have sympathy for the victim's family, was untruthful about having no plea agreement with witnesses, asserted that the petitioner killed the victim, failed to correct false testimony that the witnesses had not been granted immunity, and referred to evidence not in the record.

---

[13] Record document number 1, p. 20, and record document number 14, Traverse to State's Answer to Petition for Writ of Habeas Corpus, p. 6.

[14] State Court Record, Vol. 7, pp. 95-119.

Although the petitioner identified several pages in the trial transcript where improper comments were allegedly made, he failed to identify any specific prejudicial comment.  In other alleged instances, the petitioner failed to even direct the court to the pages in the trial transcript where the alleged misconduct is to have occurred.

Federal courts will not review a state court's interpretation of its own law in a federal habeas corpus proceeding.  *Cook v. Morrill*, 783 F.2d 593 (5th Cir. 1986).  Insofar as the foundation of the petitioner's prosecutorial misconduct claim rests on the proper interpretation and application of state law, this is an issue not within the scope of federal habeas corpus.

When a habeas petitioner alleges a generic due process violation based on improper prosecutorial comments, a reviewing court must determine whether the remarks, "in the context of the entire trial, were sufficiently prejudicial to violate [the defendant's] due process rights." *Donnelly v. DeChristoforo*, 416 U.S. 637, 639, 94 S.Ct. 1868, 1869 (1974).  It is not enough that the remarks were "undesirable or even universally condemned," *Darden v. Wainwright*, 699 F.2d 1031, 1036 (11th Cir. 1983), *affirmed, Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464 (1986); a petitioner may obtain relief only if "the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v.*

19

*Wainwright*, 477 U.S. at 180, 106 S.Ct. at 2471 (*quoting Donnelly*, 416 U.S. at 643, 94 S.Ct. at 1871).  "The prosecutor's remarks do not present a claim of constitutional significance unless they were so prejudicial that [the petitioner's] state court trial was rendered fundamentally unfair within the meaning of the Fourteenth Amendment." *Rushing v. Butler*, 868 F.2d 800, 806 (5th Cir. 1989). A trial is fundamentally unfair only if the prosecutor's remarks evince either persistent or pronounced misconduct, or the evidence was so insubstantial that in all probability but for the remarks the petitioner would not have been convicted. *Id., citing Kirkpatrick v. Blackburn*, 777 F.2d 272, 281 (5th Cir. 1985); *Fulford v. Maggio*, 692 F.2d 354, 359 (5th Cir. 1982), *reversed on other grounds*, 462 U.S. 11, 103 S.Ct. 2261 (1983).  When attacked, prosecutorial comments are not considered in isolation, but are evaluated in the context of the entire trial as a whole, including the prosecutor's entire closing argument.  *Rushing*, at 806; *Kirkpatrick*, at 281.

Courts apply a two-step analysis to claims of prosecutorial misconduct. *United States v. Insaulgarat*, 378 F.3d 456, 461 (5th Cir. 2004).  In the first step, the court must assess whether the prosecutor made an improper remark. *Id*.  If the prosecutor has made an improper remark, the court must ask whether the defendant was prejudiced. *Id*.  The prejudice step of the inquiry sets a high bar:

> Improper prosecutorial comments constitute reversible error only where the defendant's right to a fair trial is substantially affected. A criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone. The determinative question is whether the prosecutor's remarks cast serious doubt on the correctness of the jury's verdict.

*United States v. Holmes*, 406 F.3d 337, 356 (5th Cir.) (internal citations omitted), *cert. denied,* 546 U.S. 871, 126 S.Ct. 375 (2005).

The court generally looks to three factors is deciding whether any misconduct casts serious doubt on the verdict: "(1) the magnitude of the prejudicial effect of the prosecutor's remarks, (2) the efficacy of any cautionary instruction by the judge, and (3) the strength of the evidence supporting the conviction." *United States v. Mares*, 402 F.3d 511, 515 (5th Cir.), *cert. denied*, 546 U.S. 828, 126 S.Ct. 43 (2005).

### Misled Jury

During closing argument the prosecutor stated that the evidence introduced at trial was "highly probable of guilt."[15] Counsel for the defendant objected, arguing that the prosecutor was misleading the jury with arguments that "you can convict someone on just highly probable testimony."[16] The court admonished the jury that it would have to determine what the evidence has shown or not shown and instructed the jury that what the attorneys say at the

---

[15] State Court Record, Vol. 8, p. 144.

[16] *Id*. at 144-145.

end (during closing arguments) is not evidence.[17]

## Vouched for Credibility of State's Witnesses

Petitioner argued that the prosecutor vouched for the credibility of the State's witnesses.  In support of his argument, the petitioner identified the pages in the state court record where the prosecutor allegedly vouched for the credibility of the State's witnesses.[18]  A review of the pages cited by the petitioner does not support a finding that the prosecutor vouched for the credibility of the State's witnesses.

## Misquoted Defense Witness Testimony

Petitioner argued that the prosecutor misquoted defense witness testimony but failed to identify any particular testimony at issue.

## Verbally Attacked Defense Counsel

Petitioner argued that the prosecutor attacked defense counsel and made improper comments about the defense's argument.  For instance, after defendant's counsel completed his closing argument, the prosecutor stated "[y]ou know I don't know if we should stand up and give him an applause or give him an Oscar for what he just said."[19]  Defense counsel objected and the court instructed counsel

---

[17] *Id.* at 145.

[18] Record document number 1, p. 22.  Petitioner identified State Court Record page numbers 1249, 1348, 1368, 1648 and 1772.

[19] State Court Record, Vol. 8, p. 144.

to "have proper closing arguments."[20]   Later in closing argument, the prosecutor asked defense counsel to show him evidence of a fingerprint on a CD.[21]   Defense counsel responded by stating that he did not say the fingerprint was on a CD, but rather on papers in the car.[22]   The court instructed counsel to behave like lawyers and not like children.[23]

### Elicited Sympathy From Jury

Petitioner argued that the prosecutor elicited sympathy from the jury.   The prosecutor stated, "I say to you folks that that family didn't deserve it."[24]   Defense counsel objected arguing that the prosecutor was playing to the sympathy of the jury.[25]   The court instructed the jury that they were not to consider sympathy.[26]

After reviewing the pages in the trial transcript identified by the petitioner where the prosecutor is alleged to have made prejudicial comments, it is clear that, in the context of the entire trial, none of the comments cast serious doubt on the correctness of the jury's verdict.   To the extent that any of the

---

[20] *Id.*

[21] *Id.* at 154.

[22] *Id.*

[23] *Id.*

[24] *Id.* at 155.

[25] *Id.*

[26] *Id.*

23

remarks were prejudicial, the prejudicial effect of the prosecutor's remarks were mitigated by the trial judge's cautionary instructions.

### Ground 3: Defective Indictment

In his third ground for relief, the petitioner argued that the indictment was defective because it omits the essential elements of the crime.

The sufficiency of a state indictment is not a matter for federal habeas corpus relief unless it is shown that the indictment is so defective that it deprives the state court of jurisdiction. *Branch v. Estelle*, 631 F.2d 1229 (5th Cir. Unit A 1980); *see also McKay v. Collins*, 12 F.3d 66, 68 (5th Cir. 1994) (same). Where the state courts have held that an indictment is sufficient under state law, a federal court need not address that issue. *Millard v. Lynaugh*, 810 F.2d 1403 (5th Cir.), *cert. denied* 484 U.S. 838, 108 S.Ct. 122 (1987). When it appears that the sufficiency of the indictment was squarely presented to the highest court of the state on appeal, and that court held that the trial court had jurisdiction over the case, then the question as to whether a state trial court was deprived of jurisdiction is a question foreclosed to a federal habeas court. *Evans v. Cain*, 577 F.3d 620, 624 (5th Cir. 2009); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985); *Liner v. Phelps*, 731 F.2d 1201, 1203 (1984). An issue may be squarely presented to and decided by the state's highest court

when the petitioner presents the argument in his application for post-conviction relief and the state's highest court denies that application without written order. *See Alexander*, 775 F.2d at 599.

Here, whether the state trial court lacked jurisdiction was squarely presented to the Louisiana Supreme Court in the petitioner's application for supervisory review. The Louisiana Supreme Court necessarily, though not expressly, held that the state trial court had jurisdiction. Because this issue was presented to and denied by the Louisiana Supreme Court, this claim is precluded.

### Ground 4: Ineffective Assistance of Counsel

In his fourth ground for relief, the petitioner argued that he was denied effective assistance of counsel.

To obtain habeas relief based upon a claim of ineffective assistance of counsel, the petitioner must show "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984). To prove deficient performance the petitioner must demonstrate that counsel's actions "fell below an objective standard of reasonableness." *Id.*, at 688, 104 S.Ct. at 2064. To prove prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.*, at 694, 104 S.Ct. at 2068, and that "counsel's deficient

performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844 (1983).

"Under AEDPA, a state court must be granted deference and latitude that are not in operation in a case involving direct review under *Strickland*." *Harrington v. Richter,* _____ U.S. _____, _____, 131 S.Ct. 770, 778 (2011).  The standards created by *Strickland* and § 2254(d) are both highly deferential. *See Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 2066 n. 7 (1997). This test is "difficult to meet" and a state court's determination that a claim lacks merit "precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of that decision." *Harrington*, 131 S.Ct. at 778.  Thus, the question under § 2254 is not whether the counsel's actions were reasonable, but whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.  *Id*. at 777.

Petitioner asserted that his trial counsel was ineffective when he: (a) failed to appeal the denial of his *pro se* motions by the trial court; (b) failed to file a motion to quash the indictment after the petitioner was not re-indicted or tried within three years; (c) failed to locate witnesses who would testify on the petitioner's behalf; (d) relied on a strategy to attack the weaknesses in the prosecution's case instead of investigating to discover witnesses despite the existence of a credible defense; (e)

failed to investigate and obtain exculpatory evidence; (f) failed to interview the police officer who confiscated a firearm from the petitioner; (g) failed to investigate and introduce key exculpatory evidence; (h) rejected the petitioner's *pro se* motion for a speedy trial and failed to file a motion for speedy trial on the petitioner's behalf; and (i) failed to retain a drug expert after the petitioner advised counsel that the State's witnesses were all drug users.

No aspect of the petitioner's ineffective assistance of counsel claim has any merit.

### Ground 4(a)

In Ground 4(a) the petitioner argued that counsel failed to seek appellate review of unspecified *pro se* motions.

Petitioner has presented no basis upon which to conclude that counsel's failure to appeal the apparent denial of his *pro se* motions was deficient.

### Grounds 4(b) and (h)

In Ground 4(b) the petitioner argued that his counsel was ineffective when counsel failed to file a motion to quash the indictment after the petitioner was not re-indicted or tried within three years after being arrested.  In Ground 4(h) the petitioner argued that his counsel was ineffective when counsel rejected the petitioner's *pro se* motion for a speedy trial and failed to file a motion for speedy trial on the petitioner's behalf.

27

As noted in the analysis of Ground 1, the lengthy delay between the petitioner's arrest and his trial was not substantially caused by the State.  Petitioner presented no basis upon which to conclude that filing of a motion to quash would have been reasonable or that a pro se speedy trial motion would have been granted.

### Grounds 4(c) and (d)

In Ground 4(c) the petitioner argued that counsel was ineffective when he failed to locate witnesses who would testify on the petitioner's behalf.  In Ground 4(d) the petitioner argued that counsel was ineffective when he relied on a strategy to attack the weaknesses in the prosecution's case instead of conducting an investigation to discover witnesses despite the existence of a credible defense.

Counsel's conscious and informed decision on trial tactics and strategy is not a permissible basis for a claim of ineffective assistance of counsel unless the chosen strategy was so poor that it robbed the defendant of any opportunity to get a fair trial. *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997).

Petitioner failed to demonstrate that there were any witnesses who would have aided in his defense.  There is no basis upon which to conclude that there is a reasonable probability that, but for counsel's failure to call the petitioner's alleged witnesses, the result of the proceeding would have been different.  *Strickland*,

28

466 U.S. at 694, 104 S.Ct. at 2068.

### Grounds 4(e), (f) and (g)

In Ground 4(e) the petitioner argued that counsel was ineffective when he failed to investigate and obtain exculpatory evidence.  In Ground 4(f) the petitioner argued that counsel was ineffective when he failed to interview the police officer who confiscated a firearm from him. In Ground 4(g) the petitioner argued that counsel was ineffective when he failed to investigate and introduce key exculpatory evidence.

A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial. *Burns v. Epps*, 342 Fed.Appx. 937, 939 (5th Cir. 2009).

Petitioner failed to show what further investigation would have revealed and how it would have helped him.

### Ground 4(i)

In Ground 4(i) the petitioner argued that counsel was ineffective when he failed to retain a drug expert after the petitioner advised counsel that the State's witnesses were all drug users.

The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland*, 466 U.S. at 686, 104

29

S.Ct. at 2064. *Strickland* recognized that "[t]here are countless ways to provide effective assistance in any given case." *Id*. at 689, 104 S.Ct. at 2065. *Strickland* also noted that there comes a point where a defense attorney will reasonably decide that another strategy is in order, thus "mak[ing] particular investigations unnecessary." *Id*. at 691, 104 S.Ct. at 2066. Recognizing the "tempt[ation] for a defendant to second-guess counsel's assistance after conviction or adverse sentence," the Court established that counsel should be "strongly presumed to have rendered adequate assistance and made all significant decisions in exercise of reasonable professional judgment." *Id*. at 690, 104 S.Ct. at 2066. To overcome that presumption, a defendant must show that counsel failed to act "reasonabl[y] considering all the circumstances." *Id*. at 688, 104 S.Ct. at 2065.

In *Harrington v. Richter*, the Supreme Court denied habeas relief to a petitioner who sought a new trial on the grounds that his counsel provided ineffective assistance of counsel when he failed to present expert testimony on blood evidence. ____ U.S. _ ____, _____, 131 S.Ct. 770, 777 (2011). The Court found that the expert testimony did not have an apparent value, and, even if it did, "it would be reasonable to conclude that a competent attorney might elect not to use it here, where counsel had reason to question the truth of his client's account." *Id*. at 779. The Court reasoned that "[a] state court could reasonably conclude that

30

a competent attorney could elect a strategy that did not require using blood evidence experts. Rare are the situations in which the latitude counsel enjoys will be limited to any one technique or approach." *Id.* at 779.

Petitioner has neither indicated what testimony the expert would have given nor shown that an expert witness would have aided in his defense. The conclusion that the outcome of the trial would have been different if this unspecified evidence had been presented is entirely speculative.

As to the entirety of Ground 4, ineffective assistance of counsel, the petitioner failed to demonstrate either deficient performance or prejudice. Petitioner's ineffective assistance of counsel claim has no merit.

## RECOMMENDATION

It is the recommendation of the magistrate judge that Brian K. Mosby's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody be denied.

Baton Rouge, Louisiana, November 26, 2012.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE